**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

AIDANA YERKEBAYEVA,

               Petitioner,

   v.

TODD LYONS, et al.,

               Respondents.

Case No. EDCV 26-3840-AS

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

On July 10, 2026, Aidana Yerkebayeva (A# 244-067-886) ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that Respondents violated her Fifth Amendment due process rights by re-detaining her on July 6, 2026, without prior hearing or a hearing, after she had spent more than three years on supervised release. (Dkt. No. 1). She seeks immediate release and an injunction to prevent

Respondents from re-detaining her without a prior hearing before a neutral decisionmaker where the government bears the burden to prove by clear and convincing evidence that she is a flight risk or danger to the community. (Id. at 42-43).

On July 20, 2026, Respondents filed a very brief Response to the Petition stating that Petitioner is entitled, at most, to a bond hearing before an immigration judge under 8 U.S.C. § 1226(a). (Dkt. No. 8). Respondents note that Petitioner "was recently arrested for theft," but they provide no other facts or explanation for why this would justify her current detention. (Id. at 1). Petitioner filed a Reply in support of the Petition on July 21, 2026. (Dkt. No. 10).

For the reasons stated below, the Petition is GRANTED; Respondents are ORDERED to release Petitioner immediately from immigration detention under the same conditions to which she was subject prior to her current detention; and Respondents are further ENJOINED and RESTRAINED from re-detaining Petitioner without providing her with notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[1]

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 4-6, 9).

2

**BACKGROUND**

Petitioner is a native and citizen of Kazakhstan who entered the United States on June 6, 2023, through the port of entry at Hidalgo, Texas, after presenting herself to United States Customs and Border Protection officers for inspection. (Petition ¶¶ 3-4, 32-33, Ex. B). She was issued a notice to appear charging her as removable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and was released on supervision. (Petition ¶¶ 4, 34-35, 40, Ex. B). She has since attended every scheduled ICE appointment, remained at her known residence, maintained communication with immigration authorities, fully participated in her pending immigration proceedings, and complied with all the conditions of her release. (Id. ¶¶ 5, 43-50). Her removal proceedings remain pending, and no final order of removal has been issued. (Id. ¶¶ 7, 36-38).

On July 3, 2026, Petitioner "became involved in a minor incident" as a result of which she was arrested and charged with petty theft. (Id. ¶ 54). Petitioner disputes the allegations, and the matter remains pending. (Id. ¶¶ 55-56).

On July 6, 2026, Petitioner appeared for a scheduled ICE appointment and was abruptly taken into ICE custody, without any meaningful notice or meaningful opportunity to be heard. (Id. ¶¶ 9-11, 61-75).

**DISCUSSION**

For the reasons explained below, Petitioner is entitled to release from custody, among other relief, because her re-detention without prior notice and a hearing violated due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. That liberty interest persists even for those who have been previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). In such circumstances, the government's decision to release an individual from custody creates "an implicit promise,"

4

upon which that individual may rely, that his liberty "will be revoked only if he fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Thus, "as numerous courts have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Romero v. Kaiser, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); Jorge M.F. v. Wilkinson, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021)); see also Pinchi, 792 F. Supp. 3d at 1032; Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025).

Petitioner, having been previously released on her own recognizance, therefore has a protected liberty interest in remaining out of custody. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine what process he is due, the Court considers the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

5

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Petitioner's private interest is significant, as she has been living in the United States for more than three years. See Morrissey, 408 U.S. at 482 (a parolee's liberty is "valuable" since it "enables him to do a wide range of things open to persons who have never been convicted of any crime," such as being employed, spending time with family and friends, and "form[ing] the other enduring attachments of normal life").

As to the second factor, the risk of erroneous deprivation of liberty is high if Petitioner is deprived of any custody redetermination hearing or is provided a hearing only after she has been detained. Particularly as Petitioner was previously released upon being found not to pose a flight risk or danger to the community, an arrest without a prompt hearing or other procedural safeguard poses a significant risk of error, with substantial harm. See also Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia

6

v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

This is true notwithstanding the fact that Petitioner was detained by ICE three days after her arrest for petty theft. Even in such circumstances, "[t]he government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Kandola v. Warden, Cal. City Det. Facility, 2026 WL 1243464, at *2 (E.D. Cal. May 6, 2026) ("Petitioner's 2025 conviction and re-detention immediately upon release from jail does not diminish [his] liberty interest."); Ortiz v. Warden, Cal. City Corr. Ctr., 2026 WL 1104037, at *1 (E.D. Cal. Apr. 22, 2026) ("While petitioner's misdemeanor conviction may be relevant to a neutral decisionmaker's determination at a bond hearing, it does not eliminate petitioner's due process right to such determination."); Anzor I. v. ICE Field Off. Dir., 2026 WL 787978, at *3 (E.D. Cal. Mar. 20, 2026) ("That Petitioner's detention by ICE occurred immediately upon his release from criminal detention after being sentenced to time served amplifies the significance of his liberty interest."); Navjot S. v. Warden of Golden State Annex Det. Facility, 2026 WL 370140, at *3 (E.D. Cal. Feb. 10, 2026) ("[T]he

fact that Petitioner has a prior arrest only highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified."); Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025))). Respondents have offered no basis to show that Petitioner's petty-theft arrest justified re-detaining her without any hearing to assess whether detention was needed or even justified. Petitioner has no criminal convictions, and for three years she has complied with all the requirements of her release and attended every scheduled ICE check-in. At the very least, she was entitled to an opportunity to challenge the basis for re-detention.

Furthermore, "there is no countervailing government interest – the third and final Mathews factor – that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Pinchi, 792 F. Supp. 3d at 1036. Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040. Although "[t]he government may have 'a strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to 'protect[] the public from dangerous criminal aliens,'

8

or to prevent flight and thereby 'increase the chance that . . . the aliens will be successfully removed,'" Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1013 (N.D. Cal. 2025) (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)), Respondents have not argued that any delay attributable to a pre-deprivation hearing would have risked flight or harm to others. As such, there is no significant government interest in foregoing a pre-detention hearing.

On balance, the Mathews factors show that Petitioner was entitled to notice and a hearing prior to being re-detained. See also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty." (emphasis in original)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original)); Pinchi, 792 F. Supp. 3d at 1036 (Mathews test weighed in favor of requiring pre-detention bond hearing for noncitizen previously released on bond during pendency of removal proceedings); Pablo Sequen, 800 F. Supp. 3d at 1014 (same). Having been deprived of that right, Petitioner is entitled to release from detention. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to

Petitioner, who would continue to be held in detention without due process until the bond hearing takes place.").

**ORDER**

Accordingly, the Court GRANTS the Petition (Dkt. No. 1); ORDERS Respondents to release Petitioner Aidana Yerkebayeva (A# 244-067-886) immediately from immigration detention under the same conditions to which she was subject prior to her current detention; and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner without providing her with notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 21, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE